


**SO ORDERED.**

**SIGNED this 07 day of September, 2006.**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

**John C. Cook**
**UNITED STATES BANKRUPTCY JUDGE**

---

**IN THE UNITED STATES BANKRUPTCY COURT FOR**
**THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE** | ) | |
| | ) | |
| **THEODORE ROOSEVELT TONEY** | ) | **No. 06-11120** |
| | ) | **Chapter 13** |
| **Debtor** | ) | |

**M E M O R A N D U M**

This case is before the court on a motion for relief from the automatic stay filed by U.S. Bank National Association ("the bank"). The motion seeks an order vacating the stay so that the bank can recover possession from the debtor of a residence that the bank obtained through a prepetition foreclosure sale. Having considered the motion, the undisputed material facts, and the briefs and arguments of the parties, the court will grant the motion.

**I.**

The following facts are undisputed. On February 3, 2005, the debtor executed a promissory note in favor of the bank in the amount of $126,000, and a deed of trust with respect to the debtor's residence to secure repayment of the note. On April 14, 2006, the substitute trustee under the deed of trust conducted a foreclosure sale of the residence. The bank was the successful bidder, purchasing the property for $128,900.[1] The same day, the substitute trustee executed a trustee's deed to the bank as purchaser. The deed was not recorded until May 15, 2006. There is no dispute that the foreclosure was conducted in accordance with Tennessee law.

On April 19, 2006, the debtor filed a voluntary petition commencing this Chapter 13 case. The debtor listed the residence on his Schedule A (Real Property) and listed the bank's servicing agent on his Schedule D (Creditors Holding Secured Claims). The foreclosure was disclosed on the Statement of Financial Affairs.

The debtor proposed a Chapter 13 Plan, which provides the following in Section 3, entitled "Secured Claims":

[1] The bank alleges that the purchase price was the full amount of the debt and that it is not, therefore, a creditor. The debtor, however, would not stipulate that the bank bid in the full amount of its claim. Moreover, the debtor suggested that the bank may still hold other claims against the debtor such as payment for the debtor's continued use and occupancy of the premises following foreclosure, the costs of an eviction proceeding, and the cost of recording the trustee's deed. Neither party presented any evidence as to whether the bank was a creditor when this case was commenced.

(c) *Long-Term Mortgages.* The holders of the following mortgage claims will retain their liens and will be paid monthly maintenance payments which will extend beyond the life of the plan. Any arrearage amount set forth below is an estimate; arrearage claims will be paid in full in the amount in the filed claim, absent an objection. Increases in the monthly maintenance payments during the life of the plan will be paid by the indicated payer. All long term debts will be deemed current and no loan amount will be deemed in arrears as of the date of discharge or completition [*sic*] of the plan.

| *Creditor* | *Estimated Arrearage* | *Arrearage Interest Rate* | *Arrearage Monthly Payment* | *Maintenance Payment* | *Payment By: (Trustee or Debtor)* |
|---|---|---|---|---|---|
| ASC Mortgage | $5,000.00 | | $130.00 | $1086.92 | By Trustee |

(d) *De Novo Review.* Notwithstanding any provision of this plan, the secured status and classification of any purported secured claim are subject to de novo review on the request of any party in interest made within 90 days following the filing of the claim or the expiration of the deadline for filing proofs of claim, whichever comes later.

Section 8 of the plan provides: “All property listed in Debtor's schedules is included as property of the estate and shall remain so until discharge unless otherwise ordered by the Court.”

On April 21, 2006, the court sent all creditors a notice of the commencement of the case, informing them, among other things, that non-governmental creditors must file their proofs of claim by August 15, 2006. The bank’s copy of the notice was mailed to “Americas Servicing Company, 7485 New Horizon Way, Frederick, MD 21703-8388.” The bank did not file a proof of claim and did not object to confirmation of the plan. The plan was routinely confirmed without a hearing by an order entered on May 18, 2006.

On July 19, 2006, the bank filed the motion for relief from stay that is now before the court. The bank contends that it completed its foreclosure sale on the debtor's residence before the bankruptcy filing and that it is the owner of the residence. The bank seeks stay relief so that it can recover possession of the residence from the debtor who continues to remain in the residence. The debtor argues that he effectively reinstated the mortgage and regained his residence from the bank through the terms of his confirmed Chapter 13 plan.

**II.**

If a debtor's residence is sold at a foreclosure sale in Tennessee prior to the time the debtor files a bankruptcy petition, the residence does not become property of the debtor's bankruptcy estate because the foreclosure sale divests the debtor of his interest in the property. *See In re Williams*, 247 B.R. 449 (Bankr. E.D. Tenn. 2000). Moreover, under the terms of § 1322(c)(1) of the Bankruptcy Code, the debtor loses the right to cure a prepetition default in a mortgage on the debtor's principal residence if a foreclosure sale has been completed prior to the debtor's bankruptcy filing. 11 U.S.C. § 1322(c)(1); *see also Cain v. Wells Fargo Bank, N.A. (In re Cain)*, 423 F.3d 617 (6th Cir. 2005). Here, it is undisputed that a completed foreclosure sale of the debtor's principal residence occurred before the debtor commenced his bankruptcy case. Thus, at the time of the debtor's bankruptcy filing, the debtor had been divested of his property rights in the residence, and the debtor, under the terms of § 1322(c)(1), could not cure the mortgage default in a Chapter 13 plan. Nevertheless, the debtor's Chapter 13 plan did provide for payment of the mortgage arrearage and maintenance payments on the principal residence as if the mortgage were still in effect. The bank did not object to confirmation of the debtor's Chapter 13 plan, and

the plan was confirmed. The issue now is whether the confirmed plan effectively recovers the residence for the debtor and reinstates the mortgage.

In opposing the motion for relief from the stay in this case, the debtor relies on 11 U.S.C. § 1327(a), which provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Assuming that the bank is a "creditor" to which § 1327(a) applies,[2] the court must first examine what the plan provisions say.

Section 3(c) of the plan merely provides for the payment of a mortgage that was extinguished by the foreclosure sale. The plan does not expressly state that the extinguished mortgage is being revived or recreated, nor does the plan expressly state that the debtor is to recover all of his previous rights in the residence that were lost as a result of the foreclosure sale. When debtor's counsel was asked during argument how the debtor's Chapter 13 plan could bring property into the debtor's estate that did not belong to the debtor, counsel cited Section 8 of the plan, which provides that "[a]ll property listed in Debtor's schedules is included as property of the estate and shall remain so until discharge unless otherwise ordered by the Court." Because the debtor's residence was listed in his schedules, the debtor argues that the residence automatically became property of his estate when the debtor's plan was confirmed. The court disagrees. There is no basis in the law for obtaining property belonging to another through a plan provision.

---

[2] See *In re Newburn*, No. 00 B 18249, 2001 WL 101733, at *6 n.5 (Bankr. N.D. Ill. Feb. 6, 2001) (movant was not a "creditor" because mortgage was extinguished);*In re Crawford*, 215 B.R. 990, 1004 (Bankr. N.D. Ill. 1997), *rev'd & remanded on other grounds*, 217 B.R. 558 (N.D. Ill. 1998) (movant ceased being a "creditor" after foreclosure sale). *But see* note 1, *supra*.

If the debtor's argument were valid, a debtor could obtain title to any property not owned by the debtor by simply listing that property in the debtor's bankruptcy schedules, serving the owner of the property with a copy of a Chapter 13 plan that sets forth the language in Section 8 of the debtor's plan, and then obtaining confirmation of the plan. Principles of due process would certainly prohibit a debtor from taking property of another in such a manner. *See e.g., Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle)*, 412 F.3d 679, 683-84 (6th Cir. 2005) (holding that a student loan was not discharged under the terms of a confirmed Chapter 13 plan because the creditor was entitled to the procedural safeguards of a summons, complaint, and service of process in accordance with Fed. R. Bankr. P. 7004).

A more reasonable interpretation of the language in Section 8 of the debtor's plan is that it was intended to mean that property of the debtor remains property of the estate until completion of the debtor's Chapter 13 plan, and Section 8 was simply designed to mirror the court's form confirmation order, which provides that "[p]roperty of the estate does not vest in the debtor(s) until completion of the plan." To the extent, however, that Section 8 can be construed in the manner now urged by the debtor, it is ambiguous and should be construed against the debtor. *In re Tucker*, 213 B.R. 284, 287 (Bankr. E.D. Tenn. 1999). The Bankruptcy Code specifies what constitutes property of the estate, *see* 11 U.S.C. § 541, and a debtor may not redefine the term with a vague plan provision. Hence, the court declines to hold that Section 8 of the debtor's plan divests the bank of its ownership rights in the residence and revests those rights in the debtor.

The debtor's argument that his confirmed plan reinstates the bank's extinguished mortgage is similar to an argument made by the debtor in *In re Newburn*, No. 00 B 18249, 2001 WL

101733 (Bankr. N.D. Ill. Feb. 6, 2001). In *Newburn* the mortgagee conducted a prepetition judicial foreclosure action and obtained a state court order confirming the sale. The debtor then filed a Chapter 13 petition, and proposed a plan providing for regular monthly payments to the mortgagee as well as payments on the arrearage. *Id.*, 2001 WL 101733, at *1. The mortgagee filed a motion for relief from the automatic stay and also opposed confirmation of the plan. The court and the parties agreed to confirmation without prejudice to the mortgagee's right to pursue the issue raised by its motion (which the court and debtor's counsel agreed was "independent of confirmation issues"). After the plan was confirmed, the debtor asserted that *res judicata* barred further proceedings on the motion. *Id.* at *2.

The court first held that, under Illinois law, the property was sold at a foreclosure sale prepetition, so it "did not become property of the estate" and the debtor had no right to reinstate the mortgage under § 1322(c)(1). *Id.* at *2-*4. The court then held that confirmation of the plan did not preclude relief from the stay, first because the issue was reserved and second because the plan language was itself inadequate to reinstate the mortgage:

> In this case, the plan does not expressly reinstate the mortgage, nor does it contain any language resurrecting the debtor's ownership interest or terminating Beneficial's new ownership interest in the property. Instead, it provides only that unnamed secured creditors (presumably those listed in Schedule D, including Beneficial) will be paid by the trustee on a "pro rata" basis, and that the debtor shall be the disbursing agent for the "regular monthly payments due" to Beneficial. Thus, the plan merely states that the debtor apparently intends to pay a debt that she no longer owes. The court finds that the language of the plan is wholly insufficient to revive the debtor's terminated interest in the property, reinstate the mortgage, and strip Beneficial of its ownership of the property.

The court agrees with the *Newburn* court's reasoning. The debtor's plan in this case simply proposed to pay a mortgage that had been extinguished prepetition. The plan as confirmed does not revive the debtor's terminated interest in the property, reinstate the mortgage, and strip the bank of its ownership of the property.[3]

One case cited by the debtor deserves comment. In *Impac Funding Corp. v. Simpson (In re Simpson)*, 240 B.R. 559 (B.A.P. 8th Cir. 1999), the mortgagee had foreclosed on the debtors' residence but had not recorded the deed prior to the commencement of the debtor's Chapter 13 case. During the course of the bankruptcy proceedings, and prior to confirmation of the debtors' Chapter 13 plan, the mortgagee filed a motion to validate the foreclosure and for relief from the stay. After a hearing on the motion, the bankruptcy court found that the foreclosure sale had not been completed prepetition and that consequently the debtors still retained ownership of the residence. The debtors then filed a modified plan "treating the real estate as their property and proposing to cure the default due [the mortgagee]." *Id.* at 560. The mortgagee did not object to confirmation and the plan was thereafter confirmed. The mortgagee then appealed the court's ruling on the earlier motion to validate the foreclosure sale and for relief from the stay. The mortgagee, however, did not appeal the confirmation order. The Bankruptcy Appellate Panel

---

[3] It should be noted, too, that Section 3(d) of the debtor's plan expressly reserves the right of any party in interest (which would include the bank) to challenge "the secured status and classification of any purported secured claim." Although this plan language was designed to enable the trustee or any interested party to challenge the secured status of a creditor who had not filed its claim by the time of the confirmation hearing, the language does not prohibit a secured creditor from challenging its own secured status. To the extent that the language in the debtor's plan can be read as establishing a revived mortgage and a revival of the bank's secured claim, the bank's motion, which was filed within the plan-specified deadline for such *de novo* review, can be viewed as a challenge to the bank's status as a secured creditor.

dismissed the appeal for lack of jurisdiction because the mortgagee failed to appeal the confirmation order. The BAP stated as follows:

> [The mortgagee] is certainly correct when it states the principle that the commencement of a bankruptcy case does not revive a property interest that was extinguished before commencement. However, in this case, the bankruptcy court twice determined that the debtors' property rights had *not* been extinguished, once when it denied [the mortgagee]'s motion and again when it confirmed the debtors' plan. Because the latter determination has not been appealed, it binds [the mortgagee] and it is estopped from attacking that determination on appeal from the first order.

*Id.* at 562.

In *Simpson*, the bankruptcy court actually determined that the debtor still owned the residence at the time of the debtors' bankruptcy filing. That ruling governed further proceedings in the case wherein the debtors subsequently proposed a plan that treated the residence as the debtors' property. It was akin to an interlocutory ruling that was thereafter encompassed in the final order of confirmation, which was not appealed. The mortgagee knew that the debtors' modified plan was based on the court's finding that the residence belonged to the debtors, yet the mortgagee did not object to confirmation of the debtors' plan nor did it appeal the confirmation order.

Unlike the facts in *Simpson,* this court made no preconfirmation determination that the debtor still had rights in the residence after the foreclosure sale. Having made no such determination, the question here is whether the language in the debtor's confirmed plan was sufficient in and of itself to revive the debtor's terminated interest in the property, reinstate the mortgage, and

strip the bank of its ownership of the property. Because the court has concluded that it was not, the bank's motion for relief from the automatic stay will be granted.

An order will enter in accordance with this memorandum granting the bank's motion for relief from stay.

##